The next case, which will be VILLAREAL v. ALMEIDA Good morning, Your Honors. Patrick Ford on behalf of the appellants for VILLAREAL Your Honors, we are... Hold on just a second here, please All right, please go ahead Thank you, Your Honor We're here this morning to address the single certified issue, which is that of the Confrontation Clause violation We would remind the Court, though, at this point, that there is still a second issue, which is yet to... We've yet to get a decision as to whether or not it will be certified We understand that  We'll let you know Thank you, Your Honor Regarding the Confrontation Clause violation... We would have to give the government an opportunity to respond And that's what I was going to ask, Your Honor Yes Thank you We would note that Mr. Villareal was tried and convicted of murder based largely on the testimony of a witness who he was never given an opportunity to confront and cross-examine  We initially briefed this issue under the Confrontation Clause analysis that existed before the Supreme Court gave us Crawford v. Washington And that was the Ohio v. Roberts standard It was a... And this Court has now told us that Crawford does apply retroactively to our case It was our position, certainly, that we had a strong issue at that time And we believe that the issue is even stronger now Under Crawford, the only issue that really is left to be determined is whether or not... It's testimonial ...is whether or not the declarant's statement to the police is testimonial We would certainly suggest that... That's not the only issue, because the next issue is, if that's so, was it prejudicial or harmless? It's a prejudice, but in terms of establishing the violation, the only issue is whether it was testimonial We would suggest that it's a fairly non-controversial proposition That statements given to a police officer while investigating a crime at the crime scene are not testimonial Are... Are testimony Certainly testimonial, I'm sorry Yes Otherwise, you can sit down The Attorney General has provided us this morning with a list of some additional cases that she wanted submitted for the record I was wondering who submitted those There is about 20 cases, there are 18, and I can tell you, while they involve a variety of fact situations None of them come close to the situation that we have today Which is where statements are given to a police officer who's investigating a crime Can we break down the trial judge was careful, even under the prior standard, to limit what Mr. Martinez's statements would be admitted in And he, as I recall, allowed in the identification testimony describing the shooter And that he's wearing a t-shirt and a cap or bandana and all of that And then he also admitted in what the trial court considered to be, in coming within the exception, to be part of the same statement But it was essentially saying I know where he lives and taking him over and pointing out the apartment Now, is the latter testimonial? We believe that it's all testimonial, Your Honor The trial court made some effort at compromising and perhaps excising the most obvious But I think to the extent that the question in determining whether or not a statement is testimonial has to do with whether or not The likelihood that it'll be used at some point in the criminal trial I think the statements made ten minutes after the incident when the police are there asking questions, trying to find out When he makes the statements regarding the identification, although it's a less certain identification than he made later And his statements to the police that I can even take you to where he lives Statements that were made at the scene and then he was transported to the police station and then on there Certainly our position that all of that is testimonial In the event that the court finds somehow that it is not testimonial Or that Crawford doesn't apply retroactively, neither of which we think is likely But we can't do that, we're bound by law The only point that I'm trying to make is that we have it covered essentially both ways That we had it covered and we'd emphasize that it was an equally strong issue under the pre-Crawford law That there was no showing of unavailability by the state And certainly that the statements that were made up to an hour after the event were not made Following a startling event where the person had no ability to contrive or reflect Yeah, we have that in your briefing What about the prejudices? Okay, and that's really what we believe is the legitimate inquiry at this point The state wants to focus on the fact that there were four eyewitness statements that were given Independent of Mr. Mendoza's statement And we'd like to, before we address those, which we will and we believe they're important But I'd like to address a couple of key points The first being that the state had decided, the state had made a decision After they lost Mr. Mendoza the first time That they didn't have sufficient evidence to go forward with their case at that point We think that's about the strongest statement that can be made as to the importance of his testimony And the weakness of their case outside of his testimony Within that six and a half year period the state's case didn't get any stronger And the only thing that happened, the only event that happened Was that the defense lost its primary witness The only witness that knew Mr. Villarreal said, I know who he is That was the intended victim of the shooting He said, I know who he is and I can tell you that's not who it is That's not the person that fired the shot That's critical and the only reason he was not available to testify Was because he was facing criminal charges on his own Before the same prosecutor who was prosecuting Mr. Villarreal's case So we believe that's an important point The second point regarding prejudice We'd remind the court that there was no physical evidence that tied Mr. Villarreal to this crime No gun was found They did gunshot residue tests on his hand They found nothing They didn't find clothes that resembled that described on the shooter The prosecutor emphasized Mr. Mendoza's testimony in his argument to the jury And it was only after the jury requested a readback of Mr. Mendoza's testimony That the jury came back with their guilty verdict Getting to the four eyewitness statements We suggest that neither individually nor collectively Do they establish that the error in this case was harmless There was a person who was a beer truck driver Who had given not a positive identification initially But by the time he got to trial he said he only had a vague recollection That the shooter resembled Mr. Villarreal The second person whose name was Shane Was a tenant of the inn where the shooting took place And he had said he gave what he thought What appeared to be a fairly strong statement at trial Regarding his ability to identify Mr. Villarreal But then when he was reminded that he told the police initially That he couldn't be sure when he was looking at the photos Whether or not that was Mr. Villarreal He stepped back and said, you know, this was a while ago And if I said at that time that I wasn't sure Then certainly I can't be sure now The only two other people who gave an account Were an 11-year-old boy named Cruz Whose statement was that the shooter looked something like Mr. Villarreal And the fourth witness was a heroin addict Who was at the scene or nearby in an attempt to buy heroin And at that point he said that Mr. Villarreal The photograph that he saw more or less looked like the dude Or something like that We'd certainly suggest the only positive identification in this case Or the only thing that can be considered a positive identification Is that that was given by Mr. Mendoza The witness who Mr. Villarreal was not able to confront And cross his arms We don't deserve the rest of our time Now, just a minute, let me ask you just one question This is a habeas case So what is the test of harmlessness? It's under the Breck v. Abramson, Your Honor Breck v. Abramson And the other point that I'd like to make is that this court is not Restricted as it is in many cases Following a state conviction by the The deferential standards of the ADPA Insofar as this Constitution The issue was presented to the state court Both as an issue of hearsay, which is state law And also one of confrontation clause violation Under the federal Constitution The state court rendered its decision The court of appeals strictly based upon the hearsay issue It never addressed the constitutional issue The California Supreme Court, when asked to review it Simply affirmed without ever addressing it So the issue has never been addressed Well, was it addressed by the trial court? The trial court addressed it The trial court, while it was presented to the trial court It gave its ruling based upon the hearsay analysis So you're saying there is no state court decision Right, this court can't determine whether or not On the confrontation clause issue Which means we don't owe deference under ADPA That's correct It's not possible to determine whether or not the state court Was unreasonable in its interpretation Because there was no interpretation Even though it was presented, so they had the opportunity They had the opportunity, it was presented And nobody took them up on that offer Okay Thank you May it please the court Pat Saharopoulos, Deputy Attorney General for the warden Before I forget, would you address this last point? Do you agree that ADPA does not apply Because there is no state court ruling On the confrontation clause issue? No, your honor, we do not agree There was a finding that it was an excited utterance Which means there was no violation of confrontation Of the confrontation clause No, no, that means that No, no, no, that means An exception to the hearsay rule Doesn't have nothing to do with the confrontation clause It is an exception to the hearsay rule, your honor And does not require confrontation As a result of being an exception Doesn't require confrontation What, under the confrontation clause of the Constitution? Can you give me a case that says an excited utterance? No, your honor, as an exception to the hearsay rule I understand that But that's a different issue then Is there a violation of the confrontation clause? Okay, I see what you're saying The rule of evidence The rule of evidence So do you agree that there is no state court opinion Addressing the confrontation clause issue? It is not directly addressed, your honor Impliedly only Okay, thank you Appellant shot at two unarmed rival gang members And killed a woman who was walking from a mini mall with her husband Ma'am, we do understand the facts So I don't want you to use up your time on stuff we don't know Thank you, your honor You may want to focus on the argument A, whether it's testimonial And if you think it is and concede that Then could you address the prejudice issue? Yes If that's where you were going, I'm sorry But I just want to make sure you're focused on it That is exactly where I was going, your honor Because the test remains reasonable Whether the court reasonably, impliedly rejected the claim That the statement was denied him confrontation rights Our first position, as we argued in the brief Is that there was no error Because this case should be judged by the 1982 federal law Because that's when this case became final in the state courts And under the 1982 federal law The Roberts case and the Lilly case, which we have cited Allow cited utterances as exceptions to the hearsay rule Without finding Well, but that assumes that Crawford's not retroactive, doesn't it? And hasn't this court decided that it is retroactive? To the finality of the case But, your honor, yes, that is correct Bakhting is law of this circuit And doesn't that knock out Ohio against Roberts? We waive our procedural arguments Because there was no en banc review, you're correct, your honor And the petition for certiorari has not yet been filed So our position is that it was not testimonial And if it was testimonial, it was harmless error All right, now, I think that's, frankly, maybe your strongest position Tell us why you believe it was harmless under Brett Well, your honor, it's questionable whether it's testimonial in the first place Oh, but I say, let's get past that Just tell me, just assuming it is Okay, assuming it is testimonial, your honor As this court has already observed The trial judge excluded the husband's identification And the husband's full statement of how the crime occurred What he let in was that he recognized the shooter as a former neighbor And he pointed out the door of the apartment where the man lived And he also gave a description of what he was wearing Yes, that is correct, your honor But it is our position that it was harmless Because there were three impartial witnesses who also identified him As counsel stated, the man delivering beer, William Isaacson Not only identified the defendant from a photographic lineup Well, counsel, if all of that was as firm as you're now suggesting Why did the state drop the case the first time around When the now challenged testimony became unavailable Because the witness dropped out of sight? Your honor, according to the record, the witness was out of state And the people could not locate him And so they had all this other evidence that you're talking about Why not go ahead with the prosecution? Since this is a like-without-possibility-of-parole case I think they wanted to have as much evidence as they could present to the jury And how should we weigh that in the harmless error analysis? Obviously they would have preferred to have had the husband there But the harmless error standard asked this court to look at the entire record Of the evidence that was actually presented And whether the evidence that was properly admitted Was sufficient to uphold the conviction Even if the erroneously admitted evidence had not been admitted Or was admitted wrong That's what we're trying to get a handle on So what weight, if any, then There's no weight at all to give into our assessment of the likelihood From the state's own decision that it didn't want to move the case forward Without Mr. Mendoza's testimony? Your honor, that factor, I suppose, can be considered But the case of looking at the evidence actually presented as well No, I understand that I understand that, but you're also saying But then taking out the tainted testimony Can I ask also then, what about the jury note that came out? Excuse me? The note from the jury that counsel referred to Wanting read back on Mendoza The jury did ask that the testimony be re-read, your honor Twice It was dramatic testimony And I believe they wanted to see the context of it The husband recognized the defendant as a former neighbor And spontaneously told the police that Before they began questioning him And using the Bowman case, which we cited And the factors cited therein The importance of the evidence erroneously admitted Whether it was cumulative, whether it was corroborated And the strength of the entire case We believe that it is harmless under Brecht There were three impartial witnesses And William Isaacs not only identified Appellant from the photographic lineup He even said, the man in this photograph has a mustache But it is the same man He was clean shaven at the time of the shooting And in fact, appellant was clean shaven When he was picked up by the police Close in time to the crime The second witness, John Shane, was a hotel guest He signed and circled the photograph And could not make a positive identification at trial But he certainly had picked out appellant And then Freddie Miranda Who was waiting for his drug connection Had testified he had not used any drugs that day And he was waiting to purchase drugs And he also identified the defendant As did Lionel Cruz And consequently, it's our position That post-Crawford, harmless error analysis remains As the Nelson case points out to us And that under Brecht, this was a harmless error situation If I could make an analogy to the 911 call cases And the domestic violence cases, your honor It was as if the husband was asking for the police help In locating the person Rather than making a formal criminal accusation At that point And it's our position that Particularly under the cases that we have cited That the husband's statement And his act in pointing out the door Was not testimonial So much as it put the investigation in context As to how the police located appellant And placed him in the photographic lineups They also searched his home And found gang materials That corroborated the testimony Received from the other witnesses So consequently, under Bowman We believe that there is sufficient evidence In this case to find harmless error Mr. Ropless, you submitted this long list of cases Which I guess all of which hold that In the circumstances of those cases Whatever statement was involved was not testimonial If I'm going to read one case Which is your best case in this list That's closest to our facts Well, I would say that Numbers 3, 7, 14, 15, and 16 3, 7, 14, 15, and 16 Basically, a police officer testified Using excited utterances and hearsay As to how the investigation proceeded And those were found to be non-testimonial Those courts held that the statements were non-testimonial All right, thank you Thank you, sir All right, fine Thank you  The case argued is submitted All right, we will take a recess To give counsel on the White case a chance to get here But at the end of our recess If he's not here by 10.45 or thereabouts We may just decide Either submit the case or hear argument from counsel We'll come back and decide what we're doing So with the indulgence of Ms. Forslund We will go into recess and see where we go from there All right Thank you
judges: Tashima, Fisher, Shadur